THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SUSAN D'AQUILA, Defendant-Appellant.

First District (3rd Division)   No. 1—88—0989

—Rehearing denied November 18, 1991.

Opinion filed October 16, 1991.

Randolph N. Stone, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

John M. O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter Hehner, and Edward J. Maloney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant Susan D'Aquila was convicted of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1) in a jury trial and sentenced to 60 years' imprisonment. On appeal, defendant contends that (1) the trial court violated defendant's right to due process when it issued too severe a sanction for defense counsel's failure to turn over discovery material; (2) the trial court committed reversible error when it failed to allow the jury to review trial transcripts of defendant and another witness' trial testimony during jury deliberations; and (3) the extended-term sentence imposed by the trial court is excessive and should be vacated. We affirm.

On November 2, 1985, defendant married the victim, Anthony D'Aquila (Anthony), who suffered from club feet, scoliosis and arthritis of the hands. On the evening of May 29, 1986, Kimberly Kandle, Austin Stevenson, David Heard and James Johns drove to an area along the embankment of the Des Plaines River. Upon arriving at the embankment, defendant and Johns partially disrobed Anthony and pushed him into the shallow water. After Anthony walked out of the water, Kandle and Stevenson left the group to get beer. Anthony was seated on a concrete embankment adjacent to the river. Johns walked behind Anthony while defendant was holding Anthony's hand. Suddenly, defendant pulled Anthony forward while Johns pushed him from behind into the deep water. Anthony submerged, came up once and yelled, "Save me!" He then submerged again and did not resurface.

When Kandle and Stevenson returned to the embankment with beer, they saw Johns, Heard and defendant running toward the street with Anthony's pants and belt. Johns gave Kandle and Stevenson the

victim's pants and belt and instructed Kandle and Stevenson to burn them. Kandle and Stevenson testified that they burned the pants, but hid the belt in case "[defendant] did something to them." The group immediately left the embankment and met at the Cyprus Lounge, where the group stayed that night until the lounge closed.

On May 31, 1986, Anthony's body was discovered floating in the Des Plaines River. The following day, Riverside police sergeant John Augustine went to the D'Aquila's home to talk with defendant. When Sergeant Augustine told defendant that the police found a body that they believed to be Anthony, defendant pretended to be surprised and told Sergeant Augustine that she was expecting Anthony to arrive for a barbecue in a few minutes. Sergeant Augustine asked defendant to go to the morgue to make an identification of the body. Defendant stated that she would, but she never went to the morgue to make a positive identification of her husband's body.

On June 5, 1986, defendant and Johns were arrested and charged with murder and concealment of a homicide. Kandle, Stevenson and Heard were also arrested and charged with concealing a homicide. The charges were subsequently dropped against Kandle, Stevenson and Heard. They each testified at the trial of the defendant.

Prior to defendant's marriage to Anthony, defendant told a witness that she was going to marry Anthony for his money, "hustle him" and then kill him. On numerous occasions during their seven-month marriage, defendant told several witnesses that she was going to kill Anthony, stating to one witness that she was going to push her husband down a flight of stairs so that it would look like an accident.

Defendant was named as the sole beneficiary of a $19,500 life insurance policy issued on her husband's life. Additionally, defendant was the sole beneficiary of Anthony's pension, which amounted to a lump sum payment of $16,454 or $150 per month for 36 years, and was the beneficiary of a trust fund involving Anthony, the benefits and conditions of which are unknown to the court.

Following her arrest, defendant initially told the police that she had been out eating tacos with the group in Riverside, Illinois, and had not been anywhere near the Des Plaines River embankment on May 29, 1986. After being told by the police that two parking tickets were issued to her automobile at or near the Des Plaines River embankment at 10:15 p.m. on May 29, 1986, defendant admitted that the group went to the river embankment for a while that evening, but refused to admit any involvement in Anthony's death.

At trial, defendant testified that she witnessed either Heard or Johns push Anthony into the water and that she attempted to save her

husband's life but was knocked to the ground by Heard. Defendant further testified that Johns threatened to kill her daughter if she implicated him in the killing, and it was for this reason that she did not cooperate with the police.

The trial court ruled that the murder was accompanied by exceptionally brutal and heinous behavior and sentenced defendant to serve an extended term of 60 years' imprisonment in the Illinois Department of Corrections.

Defendant first argues that the trial court violated defendant's right to due process when it issued too severe a sanction for defense counsel's failure to turn over discovery material. We disagree.

During cross-examination of Heard, defense counsel sought to question him regarding the existence and contents of two letters he had written to defendant. The two handwritten letters from Heard to defendant, written from prison shortly after their arrests, contain statements of Heard's affection for defendant, poetry, and various proclamations of Heard's belief that defendant would be acquitted of the crimes for which she was charged. Defendant contends that the trial court abused its discretion when it precluded defense counsel from questioning Heard regarding the contents of the letters because defense counsel had not disclosed the existence of the letters to the prosecution prior to trial. This contention is without merit.

■■ A defendant is obligated to furnish the prosecution any tangible objects he intends to use as evidence or for impeachment at a hearing or trial. (107 Ill. 2d R. 413(d)(ii).) In the event a defendant fails to comply, the trial court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances. 107 Ill. 2d R. 415(g).

■■ In precluding the use of the letters during cross-examination, the trial court stated that "this case fits into the category of willful misconduct for which the severe sanction of preclusion is justified to protect the integrity of the judicial process." We agree. Accordingly, we hold that the trial court did not abuse its discretion. *People v. Morgan* (1991), 142 Ill. 2d 410, 568 N.E.2d 755; *Taylor v. Illinois* (1988), 484 U.S. 400, 98 L. Ed. 2d 798, 108 S. Ct. 646.

Defendant's next argument concerns two notes the jury sent the trial court while it was deliberating. In its notes, the jury asked the trial court for the transcripts of the testimony of defendant and Heard. The trial court responded to each of the notes: "The transcripts are not available. You have all the evidence."

■ The decision to furnish the jury with transcripts of testimony rests within the discretion of the trial court. Absent an abuse of discretion, the trial court's decision will not be disturbed on review. (*People v. Franklin* (1990), 135 Ill. 2d 78, 105, 552 N.E.2d 743, 755; see also *People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579; *People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577.) There is nothing to demonstrate that the trial court abused its discretion in the present case. As a result, defendant's argument is without merit.

In addition, we conclude that any error that may have been committed by the trial court would be harmless error. The State presented overwhelming evidence of defendant's guilt. The State presented four witnesses who testified that they heard defendant say that she planned or wanted to kill Anthony. Also, Heard described the events that transpired at the river embankment, and testified that defendant stated to him after the incident, "Thank god it's over." Moreover, defendant's own statements demonstrate that any error by the trial court would have been harmless beyond a reasonable doubt. See *People v. Schriner* (1990), 198 Ill. App. 3d 748, 555 N.E.2d 1257.

■ Defendant's final argument is that the extended-term sentence is excessive and should be vacated. We disagree. Defendant is eligible for an extended-term sentence based on section 5—8—2 of the Unified Code of Corrections, which permits the trial court to sentence a defendant to an extended term of between 40 to 80 years' imprisonment if it determines that certain aggravating factors are present. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2.) Aggravating factors applicable to the present case include exceptionally brutal or heinous behavior indicative of wanton cruelty and the victim's physical handicap at the time of the offense. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.2(b)(2), (b)(3).) During the sentencing hearing, the trial court found that the crime was "a cold, cruel, calculated, premeditated crime based on avarice and greed" committed against a man who was "badly physically handicapped." Our review of the record reveals that the trial court's finding is consistent with the evidence presented. We therefore hold that the extended-term sentence imposed by the trial court was not an abuse of discretion. See *People v. Andrews* (1989), 132 Ill. 2d 451, 548 N.E.2d 1025.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

CERDA, P.J., and GREIMAN, J., concur.