THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DARRYL J. SUTTON, Defendant-Appellant.

First District (3rd Division)   No. 1—92—0337

Opinion filed August 11, 1993.—Rehearing denied September 28, 1993.

Rita A. Fry, Public Defender, of Chicago (Janet Stewart, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Judy DeAngelis, and Kristin E. Piper, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

After a jury trial, defendant, Darryl J. Sutton, was found guilty of attempted aggravated criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4, 12—14), attempted criminal sexual assault (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4, 12—13), attempted aggravated criminal sexual abuse (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4, 12—16), aggravated battery of a physically handicapped person (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(a)(6)), and aggravated battery on a public way (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(8)). Defendant was sentenced to concurrent terms of 10 years for attempted aggravated criminal sexual assault, seven years for attempted criminal sexual assault, five years for attempted aggravated criminal sexual abuse and five years for each count of aggravated battery. We affirm in part, reverse in part and vacate in part.

The issues before this court for review are (1) whether defendant's convictions were based upon a "doubtful" identification; (2) whether the trial court properly responded to the jury's three questions during its deliberation; (3) whether defendant was improperly convicted of multiple offenses arising from the same physical acts; (4) whether defendant is entitled to a new sentencing hearing on the basis that the trial court improperly considered the fact that the victim was handicapped at the time of the crime and the impact upon the victim as factors in aggravation; (5) whether defendant is entitled to a new sentencing hearing on the grounds that his convictions for multiple offenses prejudiced the trial judge and influenced him to sentence defendant to 10 years' imprisonment for attempted aggravated criminal sexual assault; and (6) whether defendant's sentences were excessive.

The following fact scenario occurred. As of March 21, 1991, the complainant, A.R., lived with her mother in Summit, Illinois. At approximately 7:15 p.m., A.R. left her house and walked to a nearby fast food restaurant known as Nicki's Hot Dog Stand located on West 63rd Street in Summit, Illinois. A.R. testified that she chose to take the fastest route to and from the hot dog stand, which was through the alley behind her home, because she had *spina bifida*, a disease which impaired her ability to walk. (See Stedman's Medical Dictionary 1315 (24th ed. 1982).) A.R. was inside the hot dog stand for approxi-

mately five minutes. Once A.R. purchased her food, she proceeded back through the alley towards her home.

A.R. told the court that as she approached the gate to her back yard, she heard footsteps progressing towards her, whereupon she turned around and saw defendant. A.R. testified that defendant was wearing a white sweatshirt and grey pants at that time. A.R. further testified that she noticed that defendant had a very short haircut, a mustache and stubble on his face. A.R. recalled that defendant grabbed her around her neck whereupon she dropped her food and screamed "help." A.R. further testified that defendant then dragged her toward the garbage dumpsters in the alley behind her house and pushed her down on the ground as she continued to scream. A.R. recalled that defendant asked her if she would stop screaming if he stopped choking her and that she indicated she would. A.R. told the court that defendant responded by removing his hand from her mouth, at which time she screamed again and defendant struck her on her face. A.R. testified that defendant then grabbed the waistband of her pants. A.R. told the court that she subsequently tried to escape but that defendant pushed her back down on the ground and dragged her further behind the dumpsters where he removed her shoe, pulled her pants and underwear down and placed his body on top of hers. A.R. recalled that defendant then pushed her closer to a building. A.R. testified that she attempted to hit a door on the building in the hopes of making enough noise to get someone's attention. A.R. further testified that after banging on the door she screamed again and defendant told her to "shut up."

Erika Gross, an employee of Video Junction, a video rental business located at 7520 West 63rd Street in Summit, Illinois, testified that at approximately 7:30 p.m. on March 21, 1991, she heard a woman scream while she was counting video rental receipts and money in the rear office of the establishment. Gross informed the court that the rear office had a door which led to the alley. Gross testified that upon hearing the scream she walked over to the back door to listen whereupon she heard a man say "shut up, shut up." Gross stated that she then telephoned the police.

A.R. further testified that while she was lying on the ground she looked underneath the dumpsters and saw lights moving down the alley towards her. A.R. stated that after seeing the lights, she heard defendant pull the zipper on his pants down. A.R. further testified that she heard someone get out of a car and that she screamed again but that defendant placed his hand over her mouth in an attempt to silence her. A.R. recalled that she was looking right at defendant

while his hand was covering her mouth. A.R. further testified that she then saw the police move towards the dumpster whereupon defendant got up and ran away.

Police officer Joseph Marrotta testified that on March 21, 1991, he was on patrol in Summit, Illinois, when he received a message on his squad car radio informing him of an assault. Officer Marrotta testified that he responded to the radio dispatch by proceeding down an alley located behind a Video Junction establishment whereupon he heard a female voice screaming and he saw a man jump out from behind some dumpsters and run. Officer Marrotta testified that he then exited the squad car, yelled "stop, police" and chased the suspect. Officer Marrotta was unable to detain the suspect. However, he observed that the suspect was wearing a white shirt, dark trousers and white athletic shoes. He also noted that the suspect was approximately 5 feet 11 inches tall and weighed approximately 200 pounds. Officer Marrotta testified that he got back into his squad car and patrolled the area after losing sight of the suspect. Officer Marrotta stated that when he reached the alley at 75th Avenue, in Summit, Illinois, he saw a green Ford automobile. Officer Marrotta testified that defendant was the driver of that automobile and that he was wearing a soiled white shirt. Officer Marrotta further testified that he questioned defendant, but he did not arrest him at that time.

Next, Sergeant Michael Stancato testified that on March 21, 1991, he was on patrol in Summit, Illinois, when he heard a radio dispatch informing him of an assault. Sergeant Stancato testified that he responded by proceeding to an alley near 75th Avenue and driving down the alley whereupon he observed a man jump from behind a garbage dumpster and run past his patrol unit. Sergeant Stancato testified that he then approached the dumpster at which time he observed a female sitting on the ground crying. Sergeant Stancato recalled that she was wearing a jogging suit and that her pants and underwear were pulled down to her ankles. Sergeant Stancato testified that he helped the victim, A.R., collect her clothes and that he asked her if she was all right. Sergeant Stancato testified that he then escorted the victim to his squad car and requested, over his radio, that the police dispatcher ask medical personnel to meet him and the victim at the Summit police station. Sergeant Stancato testified that A.R. subsequently gave him a description of her assailant.

A.R. was then taken to the Summit police station, where she was treated by the paramedics. The victim sustained abrasions on her nose, right arm, right buttock, right leg and bruises around her right

eye. The victim also talked to Detective Charles Wasko while she was at the police station.

After this preliminary interview, Detective Wasko, Sergeant Stancato, Officer Marrotta and the victim all returned to the scene of the crime. Detective Wasko testified that when the group arrived at the scene of the crime on the night of March 21, 1991, there were four streetlights in the alley and that all of these lights were illuminated. In addition, the officers found one of the victim's earrings, a spilled soft drink and a bag of food that she dropped.

After investigating the crime scene, they all returned to the Summit police station, where Detective Wasko prepared a composite of the victim's assailant at her direction. A.R. described her assailant as a black male in his mid-twenties who was approximately 5 feet 11 inches to 6 feet tall, weighing between 190 and 200 pounds, with short curly hair and a mustache. A.R. also told Detective Wasko that he was wearing a white shirt with dark-colored pants and white or light-colored shoes at the time of the assault.

On March 23, 1991, the victim returned to the Summit police station, where she viewed a physical lineup. After viewing the lineup, A.R. identified defendant as her assailant. A.R. later testified that she had never had any direct contact with defendant but that she had seen him before and she knew that he lived in the neighborhood.

After presenting the above evidence, the State rested. Defendant made a motion for a directed finding which was denied by the trial court. The defense then presented its case. Defendant testified on his own behalf. Defendant told the court that he was wearing a tan shirt and brown pants on March 21, 1991. Defendant maintained that on that date, he had a full bushy mustache but he did not have a beard. Defendant further testified that he and Terry Kirksy were working on a car until 7:30 p.m. on that date. Defendant testified that while Kirksy left to get a soft drink, he stayed with the car and talked to another man, named Tony Purchase. Defendant maintained that when Kirksy returned at 7:45 p.m., he and Kirksy went to a liquor store to purchase wine. Defendant testified that they then drove around and that while they were driving, Officer Marrotta stopped them at approximately 8 p.m. and asked them what they were doing but that the policeman allowed defendant to drive away. Defendant testified that he then drove Kirksy home.

Kirksy testified that defendant exited the car around 7:30 p.m. and walked down an alley behind the Acme Food Store in Summit, Illinois. Kirksy further testified that he later encountered defendant hiding behind a garbage dumpster at Nicki's Hot Dog Stand where-

upon defendant jumped into the driver's seat of the car and told him to move over. Kirksy testified that defendant appeared to be nervous when he entered the car. Kirksy recalled that defendant then put on a jacket which he removed from the back seat. Kirksy testified that the two men then drove down the alley to 75th Avenue, where he and defendant were stopped by Officer Marrotta. Kirksy testified that the two men subsequently went to a liquor store after which defendant went home.

Defendant further testified that on March 31, 1991, he participated in two lineups which were held approximately 5 to 10 minutes apart. Defendant claimed that he could see A.R. in the viewing room, that he could hear her talking and that she told the police she could not identify anyone in the lineup as her assailant. Defendant admitted that he went to school with A.R.'s brother and that A.R. knew him by sight.

Sergeant Gary Misicka, Detective Wasko and Officer Marrotta also testified concerning the aforementioned lineups. Sergeant Misicka explained that on March 23, 1991, defendant participated in two lineups but that A.R. only viewed the first lineup and the victim of another separate crime viewed defendant in a second lineup. Detective Wasko testified that the second lineup was held for Hilda Walker, a robbery victim. Sergeant Misicka further testified that A.R. viewed the first lineup defendant participated in while she was in a dark room which had a small peephole which allowed her to view the suspects. Officer Marrotta maintained that none of the participants in the lineup could see A.R.

During the jury's deliberations, the jurors submitted the following three questions to the judge:

"1. Did [A.R.] initially say anything about a shadow of stubble on his face during the composite drawing?

2. Why are there scissor cuts on evidence pants?

3. What was the exact question that defendant's attorney asked defendant when he asked him did he attack the [victim]? What was the date defendant's attorney stated the attack occurred?"

The trial court convened in order to discuss the questions and possible responses with defense counsel, defendant and the prosecution. After extensive discussion as to what the answers to the questions should be, the trial court responded "yes" to question 1. The response to question 2 was as follows: "There is no evidentiary testimony during the course of the trial about scissor cuts in [the victim's] pants." The court responded to question 3 in the following manner: "Collectively

as jurors you will have to determine what the question and answer was [sic] with regard to question number three."

Following deliberations, the jury found defendant guilty of attempted aggravated criminal sexual assault, attempted criminal sexual assault, attempted criminal sexual abuse, aggravated battery of a physically handicapped person and aggravated battery on a public highway. After hearing arguments in aggravation and mitigation, the trial judge sentenced defendant to one 10-year, one 7-year and three 5-year terms to be served concurrently.

First, defendant maintains on appeal that all of his convictions should be reversed on the basis that A.R.'s identification of him as her assailant was "doubtful." The State maintains that the victim's identification of defendant was sufficient to sustain his convictions because the victim had ample opportunity to observe defendant during the crime and she was able to identify him shortly thereafter. We agree.

A vague or doubtful identification will not sustain a conviction beyond a reasonable doubt. (*People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317, 319; *People v. Ash* (1984), 102 Ill. 2d 485, 494, 468 N.E.2d 1153, 1157.) When the identification of a defendant is at issue, however, a single witness' identification of the accused is sufficient to sustain a conviction, even though such testimony is contradicted by the accused, providing the witness is credible and she viewed defendant under circumstances that would permit a positive identification to be made. (*Slim*, 127 Ill. 2d at 307, 537 N.E.2d at 319; *Ash*, 102 Ill. 2d at 494, 468 N.E.2d at 1157.) In assessing identification testimony, a reviewing court may not substitute its own judgment for that of the trier of fact on questions involving the credibility of witnesses or the weight of the evidence and it will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of the defendant's guilt. *People v. Johnson* (1986), 114 Ill. 2d 170, 189-90, 499 N.E.2d 1355, 1363; *People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 1076-77, 545 N.E.2d 942, 946.

The identification of defendant by A.R. in the present case is not so improbable as to raise a reasonable doubt of defendant's guilt. First, A.R. had ample opportunity to view defendant's face both before and during the assault. A.R. testified that she saw defendant just prior to the assault when he approached her while she was standing in an alley at the gate to her backyard. A.R. also gave the police a detailed description of defendant's appearance at that time. Furthermore, A.R. testified that she was looking right at defendant while she was lying on the ground and he was positioned on top of her. Detec-

tive Wasko also testified that there were illuminated streetlights in the alley on the night of A.R.'s assault. The victim was attacked at 7:30 p.m. In addition, A.R. testified that she had seen him in the neighborhood before and defendant himself admitted that A.R. knew him on sight.

Second, the victim's identification of defendant was credible. The record shows that A.R.'s identification of defendant was clear and unequivocal. The victim saw defendant during the assault, she was able to describe defendant to the police and she identified defendant as her assailant when she viewed him in a lineup two days after her attack. Furthermore, there is no evidence that the police encouraged A.R. to identify defendant as her assailant. Later, during the trial, A.R. testified concerning her identification of defendant in the lineup. She stated: "I knew who my attacker was right away. I had no trouble." In addition, she positively identified defendant in open court. The credibility of A.R.'s identification of defendant is enhanced because she testified and defendant admitted that she had seen him in and around her neighborhood prior to the assault (see *People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 1076, 545 N.E.2d 942, 946 (the credibility of a witness' identification is enhanced when the witness testifies that she knew the defendant prior to the crime)).

Defendant's argument that A.R.'s identification of him is doubtful on the basis that there is some discrepancy between her descriptions of his facial hair to the police and her trial testimony regarding his facial hair is not convincing. Defendant specifically contends that his identification was doubtful because A.R. testified that he did not have a beard but that she in fact told the police that he did have a beard. Defendant also argues that his identification was doubtful because Detective Wasko, who interviewed A.R. and drafted a composite of the suspect, contradicted her testimony about defendant's facial hair when he testified that she did not tell him that her assailant had a beard. The record shows that the victim testified that she originally told the police that defendant had a beard. She further explained that he did not have a full, thick beard but that his face appeared "scruffy" and "unshaven." Even if there was a discrepancy between the victim's description of her assailant to the police and the victim's testimony concerning her prior description of defendant, her failure to notice or perfectly describe defendant's facial hair was not fatal to her positive and otherwise credible identification. *People v. Slim* (1989), 127 Ill. 2d 302, 310, 537 N.E.2d 317, 320; see also *People v. Sakalas* (1980), 85 Ill. App. 3d 59, 69, 405 N.E.2d 1121, 1130 (victim's identification testimony held to be sufficient despite his inability to re-

call whether his assailant had a moustache or a scar); *People v. Calhoun* (1971), 132 Ill. App. 2d 665, 668, 270 N.E.2d 450, 452 (conviction sustained where the defendant had a thick moustache which the victim did not mention in any preliminary descriptions).

For the above reasons, we find that the victim's positive identification of defendant is sufficient to sustain defendant's convictions.

Defendant next alleges that the trial court's response to the jury's three questions during its deliberation abridged his right to a fair trial. The State maintains that defendant waived his right to appellate review of this issue. In the alternative, the State argues that the trial court's response to the jury's questions was proper.

In the present case, defendant has failed to preserve this issue for review because he failed to object to the above issue and he failed to raise it in his post-trial motion. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 186-88, 522 N.E.2d 1124, 1129-32.) We will, however, review defendant's allegation pursuant to our authority granted under Illinois Supreme Court Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5); *Palomar v. Metropolitan Sanitary District* (1992), 225 Ill. App. 3d 182, 188, 587 N.E.2d 1067, 1071; *City of Wyoming v. Liquor Control Comm'n* (1977), 48 Ill. App. 3d 404, 407-08, 362 N.E.2d 1080, 1083; *Occidental Chemical Co. v. Agri Profit Systems, Inc.* (1975), 37 Ill. App. 3d 599, 603, 246 N.E.2d 482, 485.

■ During deliberations, the jury submitted three questions to the judge. The trial court reconvened and discussed the questions and possible responses with defense counsel and the prosecution. With regard to the jury's first question, which was whether or not A.R. mentioned that defendant had a "shadow of stubble" on his face when she assisted Officer Wasko in drafting a composite drawing of her assailant, the trial court's response to the question did not abridge defendant's right to a fair trial. The record shows that after a discussion, defense counsel, the prosecution and the trial court all agreed that the response to the jury's first question should be "Yes." Later, during the discussion of the responses to the second and third questions submitted by the jury, the trial judge asked defense counsel whether he wanted to withdraw the response to the first question. Defense counsel answered: "No, no." Where a defendant acquiesces in the trial court's answer to a jury's question, he cannot later complain that the trial court abused its discretion. (*People v. Reid* (1990), 136 Ill. 2d 27, 38, 554 N.E.2d 174, 179.) Since defense counsel in the present case acquiesced with respect to the trial court's answer to the jury's first question, he is now precluded from complaining that the trial court abused its discretion. Furthermore, defendant was not preju-

diced by the trial court's response. In light of all of the evidence, the trial court's affirmative response to the jury's first question would not have changed the jury's verdict. Defendant, therefore, was not prejudiced by the trial court's response to question 1.

With regard to the jury's second question, concerning scissor cuts on the victim's pants, defendant again acquiesced to the trial court's response. After discussing what the appropriate answer to the jury's second question should be, defendant, the State and the trial court all agreed that the trial court should tender the following response to the jury: "There's no evidentiary testimony during the course of the trial about scissor cuts." After further discussion both parties and the court agreed that the response should be modified to read: "There was no evidentiary testimony during the course of the trial about scissor cuts in [the victim's] pants." Accordingly, defendant cannot now complain that the trial court abused its discretion in rendering this answer to the jury's question. See *Reid*, 136 Ill. 2d at 38, 554 N.E.2d at 179.

Furthermore, defendant was not prejudiced by the trial court's response. Whether or not the victim's pants had scissor cuts in them was not a critical issue in the present case. For the aforementioned reasons, the answer to the jury's second question was neither improper nor prejudicial.

With regard to the jury's third inquiry concerning defense counsel's question to defendant about the date of the assault, we find that the trial court's response to the jury was proper. The decision to furnish a jury with transcripts of testimony rests within the sound discretion of the trial court. Absent an abuse of discretion, the trial court's decision on this matter will not be disturbed on review. (*People v. Olinger* (1986), 112 Ill. 2d 324, 348-49, 493 N.E.2d 579, 591-92; *People v. D'Aquila* (1991), 220 Ill. App. 3d 905, 908-09, 581 N.E.2d 336, 339.) In the present case, when the jury asked for the exact question that defense counsel asked defendant, they were in fact requesting a portion of the transcript of defendant's testimony. For some reason, this portion of the transcript was not available to the trial court. In exercising its discretion, the trial court determined that since the transcripts were not available, it should respond to the jury's question in the following manner: "Collectively as jurors you will have to determine what the question and the answer was [*sic*] with regard to the question number three." There is no evidence that the trial court abused its discretion on this matter.

Accordingly, the trial court's response to the jury's questions during its deliberation did not deprive defendant of his right to a fair trial.

Next, defendant contends that he was improperly convicted of multiple offenses arising from the same physical acts. Specifically, he alleges that attempted aggravated criminal sexual abuse, attempted criminal sexual assault and both battery convictions were lesser-included offenses of the offense of attempted aggravated criminal sexual assault and should thus be vacated. Defendant reasons that the act which led to the attempted aggravated criminal sexual assault, that of "[p]unching, choking and threatening" the victim, was the same act which was the basis of his convictions for attempted aggravated criminal sexual abuse and attempted criminal sexual assault, and which caused the bodily harm upon which the two aggravated battery convictions were based.

The State maintains that defendant waived his right to appellate review of the above issue because he failed to make an objection at trial and to mention the issue in his post-trial motion. (See *People v. Enoch*, 122 Ill. 2d at 186-88, 522 N.E.2d at 1129-32.) In the alternative, the State argues that defendant was properly convicted and sentenced for the aforementioned crimes because he committed five separate acts which support his five separate convictions.

Although defendant has failed to preserve this issue for review, we will review the allegation pursuant to our authority granted under Illinois Supreme Court Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5); *Palomar*, 225 Ill. App. 3d at 188, 587 N.E.2d at 1071.

The Criminal Code of 1961 defines an "included offense" in the following manner:

"§2—9. 'Included offense'. Included offense means an offense which

(a) Is established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged, or

(b) Consists of an attempt to commit the offense charged or an offense included therein." (Ill. Rev. Stat. 1991, ch. 38, par. 2—9.)

Similarly, Illinois courts have defined a "lesser-included offense" as one "composed of some, but not all, of the elements of the greater offense, and which does not have any element not included in the greater offense." (*People v. Jones* (1992), 149 Ill. 2d 288, 293, 595 N.E.2d 1071, 1073; *People v. Russell* (1992), 234 Ill. App. 3d 684, 687-

88, 600 N.E.2d 1202, 1204.) Multiple convictions and sentences may be imposed where a defendant has committed several interrelated acts if each one of the acts would support a different offense. *People v. King* (1977), 66 Ill. 2d 551, 565, 363 N.E.2d 838, 843.

The first crime that defendant was convicted of and sentenced for was the offense of attempted aggravated criminal sexual assault. An accused commits an attempted crime when, "with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1991, ch. 38, par. 8—4(a).) The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances. (*People v. Chambers* (1973), 15 Ill. App. 3d 23, 27, 303 N.E.2d 24, 27.) By considering the surrounding circumstances, it may be determined whether or not the defendant took a substantial step toward the commission of the offense. (*People v. Bonner* (1967), 37 Ill. 2d 553, 562, 229 N.E.2d 527, 533.) An accused commits "aggravated criminal sexual assault" if he commits criminal sexual assault upon a victim who was physically handicapped at the time of the incident. (Ill. Rev. Stat. 1991, ch. 38, par. 12—14(a)(6).) "Criminal sexual assault" is defined as an act of sexual penetration by the use of force or threat of force. (Ill. Rev. Stat. 1991, ch. 38, par. 12—13(a)(1).) "Sexual penetration" is defined as "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person ***. Evidence of emission of semen is not required to prove sexual penetration." Ill. Rev. Stat. 1991, ch. 38, par. 12—12(f).

In the present case, defendant was charged with attempted aggravated criminal sexual assault on the basis that he performed the following acts: "He, with the intent to commit aggravated criminal sexual assault, attempted an act of sexual penetration by force, to wit: Punching, choking and threatening [A.R.] while pulling her pants off and while he attempted to take off his pants while [A.R.] was a physically handicapped person when the act was committed[.]"

■ There is evidence that defendant committed each element of the crime of attempted aggravated criminal sexual assault. The record shows that the victim was handicapped within the meaning of the statute because she was afflicted with *spina bifida*, making it difficult for her to walk. In addition, the record shows that defendant used force when he pushed the victim down on the ground, dragged her behind a garbage dumpster, struck her and attempted to choke her. Furthermore, the record shows that defendant forcefully removed the vic-

tim's right shoe, pulled down her pants and unzipped his own pants while he was lying on top of her. These actions by defendant evidence his intent to commit aggravated criminal sexual assault and are sufficient to prove that he took a substantial step towards the commission of that offense. Thus, the evidence adduced at trial is sufficient to support the jury's verdict that defendant was guilty of attempted aggravated criminal sexual assault beyond a reasonable doubt.

The second offense for which defendant was convicted and sentenced was attempted criminal sexual assault. A person commits this offense when he commits an act which constitutes a substantial step toward committing an act of sexual penetration. Ill. Rev. Stat. 1991, ch. 38, pars. 8—4(a), 12—13(a)(11).

Defendant in the present case was charged with attempted criminal sexual assault on the basis that he performed the following acts: "He with the intent to commit criminal sexual assault, attempted an act of sexual penetration by force or threat of force upon [A.R.], to wit: Punching, choking and threatening [the victim] while pulling her pants off and while he attempted to take off his pants."

■ Upon examining the charge above, the elements of the crimes of attempted criminal sexual assault and attempted aggravated criminal sexual assault and the applicable law on included offenses, we find that defendant's conviction for attempted criminal sexual assault must be vacated. Defendant's conviction for attempted aggravated criminal sexual assault and his conviction for attempted criminal sexual assault were both based upon his punching, choking and threatening the victim while removing her pants and his effort to remove his pants in an attempt to penetrate her. It is not readily apparent from the record that defendant was convicted of attempted criminal sexual assault based upon acts different from the acts which were the basis of his conviction for attempted aggravated criminal sexual assault. Therefore, we conclude that attempted criminal sexual assault is an included offense in attempted aggravated criminal sexual assault because it may be established by proof of the same or less than all of the facts than that which are required to establish that defendant committed attempted aggravated criminal sexual assault. (See Ill. Rev. Stat. 1991, ch. 38, par. 2—9(a).) Attempted criminal sexual assault is also a lesser-included offense of attempted aggravated criminal sexual assault because attempted criminal sexual assault is composed of some, but not all, of the elements of the greater offense and does not have any element not included in the greater offense. (See *People v. Russell* (1992), 234 Ill. App. 3d 684, 687-88, 600 N.E.2d

1202, 1204.) Accordingly, we must vacate defendant's conviction for attempted criminal sexual assault.

The third offense that defendant was convicted of was attempted aggravated criminal sexual abuse. This offense occurs when the accused attempts to commit an act of sexual conduct by the use of force or threat of force and the victim is a physically handicapped person. (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4, 12—15(a)(1), 12—16(a)(4).) "Sexual conduct" is defined as "any intentional or knowing touching or fondling by the *** accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused *** for the purpose of sexual gratification or arousal of the victim or the accused." Ill. Rev. Stat. 1991, ch. 38, par. 12—12(e).

Defendant in the present case was charged with attempted aggravated criminal sexual abuse on the basis that "[h]e with the intent to commit criminal sexual abuse, attempted an act of sexual conduct by the use of force or threat of force, to wit: Punching, choking and threatening [A.R.] while pulling her pants off and while he attempted to take off his pants while [A.R.] was a physically handicapped person when the act was committed and such conduct was for the purpose of sexual gratification or arousal of the victim or the accused." There was sufficient evidence to support the jury's verdict that defendant was guilty of attempted aggravated criminal sexual abuse beyond a reasonable doubt. Defendant's act of touching the victim's body with his constituted a substantial step toward committing sexual conduct.

■ Upon examining the above charge, the elements of the crimes of attempted aggravated criminal sexual abuse and attempted aggravated criminal sexual assault, we find that attempted aggravated criminal sexual abuse is *not* a lesser-included offense of attempted aggravated criminal sexual assault. Defendant's conviction for attempted aggravated criminal sexual assault and his conviction for attempted criminal sexual assault were both based upon his punching, choking and threatening the victim while removing her pants and his effort to remove his pants. In the present case, however, attempted aggravated criminal sexual abuse is not a lesser-included offense of attempted aggravated criminal sexual assault because although attempted aggravated criminal sexual abuse is composed of some but not all of the elements of the greater offense of attempted aggravated criminal sexual assault, it has the following elements which were not included in the greater offense: (1) "Sexual conduct" required under the aggravated criminal sexual abuse statute is a different act than the element of "sexual penetration" required by the aggravated criminal sexual assault statute (see *People v. Singleton* (1991), 217 Ill. App.

3d 675, 698, 577 N.E.2d 838, 852); and (2) the act upon which a conviction for attempted aggravated criminal sexual abuse is based must been committed for the purpose of sexual gratification or arousal of the victim or the accused. Accordingly, we affirm defendant's conviction for attempted aggravated criminal sexual abuse.

The fourth crime for which defendant was convicted and sentenced was the offense of aggravated battery to a physically handicapped person. An accused commits this crime when in committing a battery he knows that the victim is a physically handicapped person. (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(b)(14).) A person commits battery if he intentionally or knowingly without legal justification and by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual. Ill. Rev. Stat. 1991, ch. 38, par. 12—3.

There was sufficient evidence that defendant was guilty of aggravated battery of a physically handicapped person beyond a reasonable doubt. Defendant stated that he recognized the victim from the way that she would limp. The record therefore shows that defendant was aware of the victim's limp and he intentionally approached her from behind and placed his right arm around her neck, so that she could not breathe.

Defendant was charged with aggravated battery of a physically handicapped person on the basis that "[h]e, in committing a battery on [the victim], intentionally and knowingly and without legal justification caused bodily harm to [the victim], and knew the individual harmed to be a person who is physically handicapped."

■ Upon examining the above charges, the elements of the crimes in question and the applicable case law, we find that aggravated battery of a physically handicapped person is not a lesser-included offense of attempted aggravated criminal sexual assault. Although defendant's guilt of aggravated battery to a handicapped person could be established by proof of the same facts needed to establish his guilt of attempted aggravated criminal sexual assault, the crime of aggravated battery of a handicapped person has the following elements which are not included in the offense of attempted aggravated criminal sexual assault: (1) Defendant *intentionally, knowingly and without legal justification caused bodily harm* to the victim; and (2) defendant *knew the victim to be a physically handicapped* person. (See *People v. Russell* (1992), 234 Ill. App. 3d 684, 686, 600 N.E.2d 1202, 1203-04.) Defendant testified that he knew the victim because he had seen her walk around the neighborhood. Thus, we af-

firm defendant's conviction for aggravated battery of a physically handicapped person.

The final offense for which defendant was charged, convicted and sentenced was aggravated battery of the victim on a public way. A person commits this offense when he is committing a battery and the battery occurs on a public way. Ill. Rev. Stat. 1991, ch. 38, par. 12–4(b)(8).

■ There was sufficient evidence to support defendant's conviction for this offense. The record shows that defendant knowingly and intentionally touched the victim in a harmful manner and rendered bodily harm to her while she was on a public way. An alley such as the one where defendant was assaulted constitutes a "public way" within the meaning of the aggravated battery statute because it was accessible to the public. *People v. Ward* (1981), 95 Ill. App. 3d 283, 287-88, 419 N.E.2d 1240, 1244. See also *People v. Pennington* (1988), 172 Ill. App. 3d 641, 644, 527 N.E.2d 76, 78-79 (sidewalk adjacent to privately owned dormitory was accessible to the public and constituted a "public way" within the meaning of the statute); *People v. Pico* (1987), 161 Ill. App. 3d 225, 231, 514 N.E.2d 224, 228 (a street is a public way); *People v. Lee* (1987), 158 Ill. App. 3d 1032, 1036, 512 N.E.2d 92, 94 (parking lot of a convenience store is a public way).

Aggravated battery on a public way is *not* a lesser-included offense of attempted aggravated criminal sexual assault because the crime of aggravated battery on a public way has the following element which is not included in the offense of attempted aggravated criminal sexual assault: Defendant *intentionally, knowingly and without legal justification caused bodily harm* to the victim. Accordingly, we affirm defendant's conviction for aggravated battery of the victim on a public way.

For the above reasons, we affirm defendant's convictions for attempted aggravated criminal sexual assault, attempted aggravated criminal sexual abuse, aggravated battery of a physically handicapped person and aggravated battery on a public way. We reverse defendant's conviction for attempted criminal sexual assault and we vacate his sentence for that offense because the crime is a lesser-included offense of attempted aggravated criminal sexual assault.

Defendant also contends that he is entitled to a new sentencing hearing pursuant to *People v. Garrett* (1987), 152 Ill. App. 3d 212, 504 N.E.2d 236, and *People v. Rhodes* (1986), 141 Ill. App. 3d 362, 490 N.E.2d 169, because the trial court considered the fact that the victim was handicapped as a factor in aggravation, while this was an element which was inherent in the crimes of attempted aggravated

criminal sexual abuse and aggravated battery. Defendant also argues that he is entitled to a new sentencing hearing because the trial court considered in aggravation the impact on the victim of which there was no testimony.

The State maintains that defendant has waived his right to appellate review of this issue because he failed to object to the alleged error at trial and he failed to mention the allegation of error in his post-trial motion. In the alternative, the State maintains that defendant has failed to prove that the trial court abused its discretion in sentencing defendant.

Although defendant has failed to preserve this issue for review (see *People v. Enoch*, 122 Ill. 2d at 186-88, 522 N.E.2d at 1129-32), we will review his allegation pursuant to our authority granted under Illinois Supreme Court Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5); *Palomar*, 225 Ill. App. 3d at 188, 587 N.E.2d at 1071.

A trial court's sentence will not be disturbed on appeal absent a clear abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884; *People v. Jenkins* (1991), 209 Ill. App. 3d 249, 263, 568 N.E.2d 122, 132.) In order to establish that the trial court abused its discretion in sentencing defendant, defendant must affirmatively show that the sentence was based upon improper considerations or was otherwise erroneous. (*People v. Anderson* (1986), 112 Ill. 2d 39, 46, 490 N.E.2d 1263; *People v. Conley* (1983), 118 Ill. App. 3d 122, 133, 454 N.E.2d 1107.) There is a rebuttable presumption that a sentence imposed for a crime was proper, and this presumption may only be overcome by an affirmative showing that the sentence varies greatly from the purposes and spirit of the law or is manifestly violative of constitutional guidelines. (*People v. Escobar* (1988), 168 Ill. App. 3d 30, 46, 522 N.E.2d 191, 201.) A trial court's determination of an appropriate sentence for a defendant is entitled to great deference, as the trial judge is in the best position to make a sound determination regarding the appropriate punishment. *People v. Cabrera* (1987), 116 Ill. 2d 474, 494, 508 N.E.2d 708, 716; *People v. Trimble* (1991), 220 Ill. App. 3d 338, 350, 580 N.E.2d 1209, 1220.

■ Defendant's contention that improper aggravating factors were relied upon by the trial court in determining his sentences is insufficient to rebut the presumption that his sentences were proper. The trial judge made the following statement upon sentencing defendant:

"THE COURT: Without taking away from the seriousness of the offense, taking into consideration what rehabilitation value

you may have, the sentence of the Court will be 10 years as to the Class 1.

With regard to the Class 2, which is the attempt criminal sexual assault, that's 3 to 7 years, the sentence of the Court will be considering its a handicapped person and the fact that you are already on felony probation, there will be a sentence of 7 years as to the Class 3 which is the aggravated battery of a physically handicapped person. Aggravated battery on a public way and the other one is 2 to 5. The sentence of the Court will be 5 years. 10 years, 7 years, 5 years.

DEFENSE COUNSEL: Concurrent?

THE COURT: Concurrent is correct, counsel."

One of the factors in aggravation that a trial court may consider when sentencing a defendant is the fact that the defendant committed the crime in question against a person who was physically handicapped at the time of the offense. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(9).) The record shows that when the trial judge stated that he was considering the fact that the victim was a handicapped person, he was considering this fact as an aggravating only factor for the offense of attempted criminal sexual assault. The fact that a victim is physically handicapped is not a factor implicit in the crime of attempted criminal sexual assault. Moreover, we reversed defendant's conviction and vacated his sentence for attempted criminal sexual assault above, making defendant's contention with respect to his sentence for this crime moot. In addition, the record shows that the trial judge never stated or implied that he was considering the victim's handicap as an aggravating factor when he was sentencing defendant for the other four crimes. We therefore cannot remand this cause for a new sentencing hearing on the basis that the trial court's consideration of the fact that the victim was handicapped was improper.

Defendant also contends that he is entitled to a new sentencing hearing because the trial court improperly commented on the impact that this crime will have on the victim's future. The State maintains that this comment was proper. We agree. When determining whether a sentence was improperly imposed, a reviewing court should not focus on a few words or statements made by the trial court. The determination of whether or not a sentence was improper must be made by considering the record as a whole. (*People v. Ward* (1986), 113 Ill. 2d 516, 526-27, 499 N.E.2d 422, 425-26.) In addition, a trial court may consider the nature of the offense when sentencing a defendant. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 268, 497 N.E.2d 1138, 1143.) There is a strong presumption that a trial court's sentencing decision

is based upon proper legal reasoning and that the court has considered all evidence in mitigation. *People v. Glass* (1992), 239 Ill. App. 3d 916, 931, 606 N.E.2d 655, 666.

Furthermore, it was reasonable for the trial court to infer that a victim of such crimes may be affected by them in the future. See *Neil v. Biggers* (1972), 409 U.S. 188, 200, 34 L. Ed. 2d 401, 412, 93 S. Ct. 375, 382-83; *People v. Testa* (1984), 125 Ill. App. 3d 1039, 1045, 466 N.E.2d 1126, 1131 (a victim of sexual assault who was conscious during her attack "was no casual observer, but rather the victim of one of the most personally humiliating of all crimes").

Upon examining defendant's allegation of error and the record in light of the above case law, we conclude that defendant's sentences were proper. The remark in question is insufficient in and of itself to rebut the presumption that the sentences are proper. The trial court's comment was not sufficiently erroneous or prejudicial to warrant reversal.

Accordingly, defendant's sentences for attempted aggravated criminal sexual assault, attempted aggravated criminal sexual abuse, aggravated battery of a physically handicapped person and aggravated battery on a public way may not be vacated on this basis.

The two remaining issues before this court concern sentencing. First, defendant maintains that this cause should be remanded for a new sentencing hearing on the basis that the superfluous convictions could have influenced the trial judge in imposing a 10-year sentence for attempted aggravated criminal sexual assault, the most serious offense of which defendant was convicted.

Again, the State maintains that defendant waived his right to appellate review of the above issue because he failed to make an objection at trial and to mention the issue in his post-trial motion. See *People v. Enoch*, 122 Ill. 2d at 186-88, 522 N.E.2d at 1129-32.

■ Although defendant has failed to preserve this issue for review, we will review the allegation pursuant to our authority granted by Illinois Supreme Court Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5); *Palomar*, 225 Ill. App. 3d at 188, 587 N.E.2d at 1071.

We decline to remand defendant's cause for resentencing on the grounds that his conviction for attempted criminal sexual abuse influenced the trial judge to sentence him to 10 years for attempted aggravated criminal sexual assault, because defendant has failed to show that this occurred.

■ Finally, defendant maintains that his sentences are excessive. We disagree. The trial court considered factors in aggravation and mitigation, including the fact that defendant was on probation at

the time he committed the crimes in question. Since all of defendant's sentences are within the legislatively prescribed guidelines (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)), and defendant has failed to prove that the trial court abused its discretion, defendant's sentences for attempted aggravated criminal sexual assault, attempted aggravated criminal sexual abuse, and both counts of aggravated battery are affirmed. Defendant's conviction and sentence for attempted criminal sexual assault are reversed and vacated, respectively, because attempted criminal sexual assault is a lesser-included offense of attempted aggravated criminal sexual assault.

For the aforementioned reasons, we affirm in part, reverse in part and vacate in part the judgment of the trial court.

Affirmed in part; reversed in part and vacated in part.

CERDA and GREIMAN, JJ., concur.